*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# OPINION

No. 04-11-00545-CV

**TEXAS LAUREL RIDGE HOSPITAL, L.P.** d/b/a Laurel Ridge Treatment Center,
Appellant

v.

Dora **ALMAZAN**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-10029
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:          Karen Angelini, Justice
                  Sandee Bryan Marion, Justice
                  Steven C. Hilbig, Justice

Delivered and Filed:  July 5, 2012

REVERSED AND REMANDED

The issue in this accelerated appeal is whether Dora Almazan's cause of action against

Texas Laurel Ridge Hospital, L.P. d/b/a Laurel Ridge Treatment Center ("Laurel Ridge") is a

health care liability claim subject to the expert report requirement in section 74.351 of the Texas

Civil Practice and Remedies Code.  We hold the cause is a health care liability claim, and

because the trial court found Almazan's expert report was fatally deficient after giving her an

opportunity to cure, the court erred in denying Laurel Ridge's motion to dismiss.

**BACKGROUND**

Almazan sued Dr. Gundlapalli Surya and Laurel Ridge, alleging that when Almazan went to Laurel Ridge in June 2007 for voluntary outpatient therapeutic counseling services, the staff "closed the door behind her and did not permit her to leave." Almazan alleged she was diagnosed with mood disorder, depression, and having suicidal thoughts and plans, without having been interviewed by her treating physician, Dr. Surya, and without anyone consulting her family. She contended the admission staff prepared documents "with numerous fabrications, alleging she was suicidal and dangerous to herself, purportedly requiring inpatient mental health treatment." According to Almazan, she was confined to a locked ward and refused food until she signed a voluntary admission form. Almazan asserted she was not suicidal, and that the Laurel Ridge staff and Dr. Surya repeatedly refused to reevaluate her. She alleged she was drugged without her consent and that she was "given drugs against her will that rendered her comatose." According to Almazan, she was summarily discharged without a professionally developed continuity of care treatment plan when the insurance company refused to pay for further inpatient care. In addition, Almazan alleged that Laurel Ridge took blood samples from her that revealed "extremely high concentration of lymphocytes, a clear indication of Leukemia," and that she was not told of these results. She contends she was not diagnosed with leukemia until a year later, when she was hospitalized because of excessive bleeding. Almazan alleged that Laurel Ridge and its medical and nursing staff, including Dr. Surya, "failed to satisfy the operative standards of care for such professionals" and violated her "patient rights."

Almazan sued Dr. Surya for medical negligence and "common law negligence." She sued Laurel Ridge for: (1) medical negligence; (2) "common law negligence;" (3) fraud; (4) violations of the Texas Deceptive Trade Practices Act; (5) negligence per se, based on alleged

violations of the Texas Mental Health Code, the Texas Health & Safety Code, and the Texas Nurse Practices Act; and (6) violation of the "patient's bill of rights" promulgated under to section 321.002 of the Health and Safety Code.

Almazan attached to her petition the expert report of George S. Glass, M.D. "in compliance with Texas Civil Practice and Remedies Code § 74.351." The defendants objected to Dr. Glass's qualifications and to the sufficiency of his report. The trial court sustained the objections and gave Almazan thirty days to cure the deficiencies. After Almazan served an addendum to Dr. Glass's report, the defendants filed further objections and motions to dismiss pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code. Following a hearing, the trial court issued an order finding the report "so deficient as to the statutory requirements of § 74.351 that it constitutes no report at all." The court dismissed with prejudice all "causes of action pertaining to and involving medical malpractice claims," and awarded defendants costs and attorney's fees. The court subsequently expressly denied Laurel Ridge's motion to dismiss the claim brought under chapter 321 of the Texas Health and Safety Code, ruling the claim was not a health care liability claim subject to the expert report requirement of section 74.351 of the Civil Practice and Remedies Code. All other claims against Laurel Ridge and all Almazan's claims against Dr. Surya were dismissed.[1]

Laurel Ridge filed this interlocutory appeal, arguing the trial court abused its discretion in denying the motion to dismiss because the court erroneously concluded Almazan's Chapter 321 claim was not a health care liability claim. Almazan responds that a cause of action filed pursuant to chapter 321 of the Texas Health and Safety Code is not a "health care liability claim" and is not subject to the requirements of Chapter 74 of the Civil Practice and Remedies Code. In

---

[1] The trial court later severed Almazan's claims against Dr. Surya, and the judgment of dismissal in his favor has since become final.

addition, Almazan argues that the limitation on discovery in section 74.35(s) of the Civil Practice and Remedies Code violates the separation of powers clause of the Texas Constitution. We conclude that because all Almazan's claims against Laurel Ridge were based on the same underlying facts, they must be dismissed because Almazan did not file a timely, sufficient expert report. *See Yamada v. Friend*, 335 S.W.3d 192, 193-94 (Tex. 2010) ("When the underling facts are encompassed by provisions of [Chapter 74] in regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims."). The constitutional issue raised in Almazan's appellee's brief was not presented to or ruled on by the trial court. Nor does the question bear on the resolution of the issue Laurel Ridge presents on appeal. Accordingly, we do not address that issue.

### STANDARD OF REVIEW

We generally review a trial court's ruling on a motion to dismiss a claim pursuant to section 74.351 for abuse of discretion. *See Am. Transitional Care Ctrs. Of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). However, when resolution of the issue requires the interpretation of a statute, we apply a de novo standard. *Buchanan v. O'Donnell*, 340 S.W.3d 805, 810 (Tex. App.—San Antonio 2011, no pet.).

### APPLICABLE LAW AND CONTEXT

*Chapter 74 Texas Civil Practice and Remedies Code*

Section 74.351(a) of the Civil Practice and Remedies Code requires a claimant in a health care liability claim, not later than the 120th day after the petition was filed, to serve on all parties one or more expert reports for each physician or health care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.3511(a) (West 2011). The report must "provide[] a fair summary of the expert's opinions as of the date of the report regarding

applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* §74.351(r)(6). On timely objection that the report is insufficient, the trial court may grant one 30-day extension of time to cure the deficiency. *Id.* § 74.351(a),(c). If the trial court concludes the report does not represent an objective good faith effort to comply with the report requirement, the court must grant a motion to dismiss the claim. *Id*. § 74.351(b),(l).

Chapter 74 of the Civil Practice and Remedies Code is a recodification of former article 4590i of the Texas Revised Civil Statutes. Article 4590i, enacted in 1977, represented the Texas Legislature's efforts to modify the liability laws relating to health care claims in order to address a "crisis [that] has had a material adverse effect on the delivery of medical and health care in Texas." Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.02(6), 1977 Gen. Laws 2039, 2040 (former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.02(6)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. In article 4590i and subsequent amendments to the statute, "[t]he Legislature instituted heightened requirements for filing and maintaining lawsuits that assert professional liability claims against health care providers, shortened the statute of limitations and restricted tolling for such claims, and capped certain types of damages recoverable from these lawsuits." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846-47 (Tex. 2005).

In 1995, the Legislature amended article 4590i to add a requirement that an expert report be served on each physician or health care provider sued within 180 days after a health care liability claim was filed. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (former art. 4590i, § 13.01(d)(repealed 2003)). Failure to comply with the expert

requirement could result in dismissal of the suit. *Id*. 1995 Tex. Gen. Laws at 986 (former art. 4590i, § 13.01(e) (repealed 2003)). The new expert report requirement in article 4590i also included a conflict of laws provision, which stated, "In the event of a conflict between this section and another law, including a rule of procedure or court rule, this section controls to the extent of the conflict." *Id*. 1995 Tex. Gen. Laws at 987 (former art. 4590i, § 13.01(p)) (repealed 2003).

In 2003, the Legislature amended parts of article 4590i, repealed it, and recodified it as chapter 74 of the Texas Civil Practice and Remedies Code. Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847 (amended 2005, 2007, 2011) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 *et seq.*(West 2011)). In so doing, the Legislature found that the number of health care liability claims and the amounts being paid in judgments and settlements had "increased inordinately" since 1995 and "created a medical malpractice insurance crisis in Texas" that "has had a material adverse effect on the delivery of medical and health care in Texas." *Id.* § 10.11(a). Chapter 74 applies to all "health care liability claims," and section 74.002(a) provides that "[i]n the event of a conflict between this chapter and another law, including a rule of procedure or evidence or court rule, this chapter controls to the extent of the conflict." TEX. CIV. PRAC. & REM. CODE ANN. § 74.002(a) (West 2011). The newly codified law maintained the expert report requirement, but reduced the time for serving the report. *See id.* § 74.351.

### *Chapter 321 Texas Health and Safety Code*

Chapter 321 of the Texas Health and Safety Code was enacted in 1993 as part of a comprehensive legislative response to abuses in private psychiatric and substance abuse facilities in Texas. *See* Act of May 25, 1993, 73rd Leg., R.S., ch. 705, § 1.01, 1993 Tex. Gen. Laws 2743,

2743 (current version at TEX. HEALTH & SAFETY CODE § 321.001 *et seq.* (West 2010)); Gregg Timmons, *Crisis In the Mental Health Care Industry: An Analysis of the Practices of Private, For-Profit Psychiatric Hospitals and the Governmental Response*, 31 HOUSTON L.R. 323, 343-350 (1994). In 1991, widespread media coverage of a case involving a teenager taken from his family over their objections and committed to a private psychiatric institution led to the formation of a Senate subcommittee. *See* House Public Health Comm., Bill Analysis, Tex. SB 205, 101-102, 73rd Leg., R.S. (May 20, 1993); Timmons, 31 HOUSTON L.R. at 343-44. The subcommittee conducted hearings around the state and made proposals that formed the basis for a number of legislative initiatives in 1993, including the enactment of chapter 321 of the Health and Safety Code. Timmons, 31 HOUSTON L.R. at 344.

In the newly enacted Chapter 321, the Legislature directed the Texas Board of Mental Health and Mental Retardation, Texas Board of Health, and Texas Commission on Alcohol and Drug Abuse to each adopt a "patient's bill of rights" addressing the basic rights of patients receiving mental health and chemical dependency services in an inpatient facility. TEX. HEALTH & SAFETY CODE ANN. § 321.002(a) (West 2010); Bill Analysis SB 205, at 102-103; Timmons, 31 HOUSTON L.R. at 344-46. The Legislature gave enforcement authority to agencies and the Attorney General and provided penalties for facilities that engaged in illegal or abusive practices. *See* Timmons, 31 Houston L.R. at 346. In addition, the Legislature authorized a private cause of action in favor of a person harmed by a mental health facility's violation of the patient's bill of rights. TEX. HEALTH & SAFETY CODE ANN. § 321.003(a), (b) (West 2010). A person so harmed may sue the facility for injunctive relief, damages, or both. *Id.* Chapter 321 authorizes an award of mental anguish damages, even in the absence of other injury, and awards of exemplary damages and attorney's fees to prevailing plaintiffs. *Id.* § 321.003(c), (d). The only procedural

provisions regarding such suits found in Chapter 321 are venue and statute of limitations provisions. *See id.* § 321.003(e), (f).

Neither Chapter 321 of the Health and Safety Code nor Chapter 74 of the Civil Practice and Remedies Code refers explicitly to the other statute.

### DISCUSSION

***Is Almazan's Chapter 321 claim a "health care liability claim"?***

Chapter 74 defines a "health care liability claim" as:

> A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West 2011). A health care liability claim thus "consists of three elements. First, a physician or a health care provider must be the defendant. Second, the suit must be about the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care or health care or safety. And, third, the defendant's act, omission, or other departure must proximately cause the patient's injury or death." *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010). A private mental hospital such as Laurel Ridge is a "health care provider" within the meaning of Chapter 74. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11), (12)(A), & (14).

To determine whether the second element is met, we examine the nature of the underlying claim and are not bound by the form of the pleading or the plaintiff's characterization of her claims. *See Marks*, 319 S.W.3d at 664; *Diversicare*, 185 S.W.3d at 847; *Buchanan*, 340 S.W.3d at 811. If the alleged acts or omissions are an inseparable or integral part of the rendition of medical services or health care, then the claim is a health care liability claim. *Marks*, 319

S.W.3d at 664; *Diversicare*, 185 S.W.3d at 848-49; *Buchanan*, 340 S.W.3d at 810. Chapter 74 defines "health care" as "any act or treatment performed or furnished or that should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10). Another consideration in determining whether a cause of action is a health care liability claim is whether proving the claim would require specialized knowledge of a medical expert. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004).

Almazan's petition alleged a laundry list of conduct she contended constituted negligence, medical negligence, and negligence per se[2], including failing to provide mental health services in the least restrictive environment, involuntarily committing her, coercing her into submitting to hospitalization and treatment, failing to conduct a proper mental health evaluation, medicating her excessively and against her will, failing to provide a safe environment, failing to treat or refer her for proper treatment relating to her abnormal lab results, and failing to establish a discharge plan.

In the section of her petition that alleged a private cause of action under chapter 321 of the Health and Safety Code, Almazan referred to the "various statutory and regulatory violations" already pleaded, and alleged:

> 50. Defendant Laurel Ridge Hospital, owed Plaintiff the duty to provide proper mental health care commensurate with the licensing laws and rules promulgated thereunder, and relative to her mental health condition, and in the exercise of that duty the Defendant Laurel Ridge was required to provide such reasonable care as Almazan's condition which was known, or should have been known, and required, as stated in such state licensing laws and rules promulgated thereunder. This includes, but is not limited to, the duty to guard against the foreseeable

---

[2] Almazan's negligence per se claims were based on allegations Laurel Ridge violated the Texas Mental Health Code, the Texas Health and Safety Code, the Nurse Practices Act, and regulations regarding patients' rights, hospital licensing, consent to treatment with psychoactive medication, and patient abuse and neglect in private psychiatric hospitals.

consequences of the patient's injury, medical condition, lab work or treatments that brought her to the facility in the first instance.

51. The Defendant Laurel Ridge Hospital, by and through its agents, contractors and employees, violated these statutory and regulatory duties owing to the Plaintiff and was liable to her, as has been more fully described herein.

52. Each and every act of negligence per se, as listed above, was a proximate cause of Plaintiff's damages.

The essence of Almazan's Chapter 321 cause of action is that Laurel Ridge departed from the applicable standards of medical and health care, those standards being the patient bill of rights and the rules and regulations promulgated pursuant to section 321.002(a) of the Health and Safety Code. The alleged wrongful acts and omissions were inseparable from Laurel Ridge's rendition of mental health care services to Almazan. Almazan concedes the facts upon which she bases her Chapter 321 cause of action are the same as those underlying her medical malpractice and negligence per se claims, and that in order to prevail on the claims she would be required to provide expert testimony. Almazan also does not dispute the third element — that the injuries she alleges were proximately caused by the claimed departures from the applicable standards of medical and health care.

Almazan contends a "health care liability claim" has an additional element: the cause of action alleged must "sound in tort or contract." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). She argues her Chapter 321 cause of action does not sound in tort, but rather "sound[s] in a constitutional deprivation, further supported by the statutory and regulatory standards found in the mental health code, and the regulations promulgated thereunder." We disagree. A "tort" is "[a] civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another." BLACK'S LAW DICTIONARY 1526 (8th ed.

2004). Almazan's claim that she suffered personal injury as a result of a mental health provider's breach of its duties to her clearly alleges a tort. That the duty is imposed by statute or the remedy is authorized by statute does not mean the alleged wrong is not a tort. *See JCW Electronics, Inc. v. Garza*, 257 S.W.3d 701, 702 (Tex. 2008) (holding that party seeking damages for death or personal injury pursuant to a claim for breach of an implied warranty under article 2 of the Uniform Commercial Code is seeking damages in tort and therefore is subject to the proportionate responsibility scheme in chapter 33 of the Civil Practice and Remedies Code.). In her petition, Almazan herself characterized the Chapter 321 claim as a claim of "negligence per se." Moreover, the broad definition of "health care liability claim" in Chapter 74 evidences an intent by the Legislature to broadly include all causes of action for injury or death caused by a departure from the applicable standards of medical or health care.

We conclude the cause of action Almazan alleged under Chapter 321 falls squarely within Chapter 74's definition of health care liability claim. *See Broxterman v. Carson*, 309 S.W.3d 154, 158 (Tex. App.—Dallas 2010, pet. denied) (plaintiff's claims of fraud, intentional infliction of emotional distress, violations of Texas Health and Safety Code, assault, battery, and civil rights violations, including claims of involuntary medication, all arose from the rendition of mental health care services and were health care liability claims requiring expert report); *Tex. Cypress Creek Hosp., L.P. v. Hickman*, 329 S.W.3d 209, 217 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (plaintiff's cause of action under chapter 321 of the Texas Health and Safety Code, alleging medication errors, unsafe conditions, and inadequate staff supervision by mental health facility was health care liability claim); *Groomes v. USH of Timerlawn, Inc.*, 170 S.W.3d 802, 806-07 (Tex. App.—Dallas 2005, no pet.) (various causes of action of parent and her minor son arising out of hospital's failure to discharge child on parent's request and administration of

medication without consent, were all health care liability claims because they were integrally related to the provision of mental health care services); *Parker v. CCS/Meadow Pines, Inc.*, 166 S.W.3d 509, 513 (Tex. App.—Texarkana 1995, no pet.) (claims that private mental hospital improperly restrained patient, had insufficient and improperly trained staff, violated patient's rights as set out in Patient's Bill of rights, and failed to properly treat his injuries, all required reference to standards by which mental health institutions restrain and otherwise care for patients and are all health care liability claims requiring expert report).

Having concluded that Almazan's Chapter 321 cause of action against Laurel Ridge is a health care liability claim, we turn to Almazan's arguments that the expert report requirement in Chapter 74 of the Civil Practice and Remedies Code does not apply to the claim.

### *Do Chapter 321 claims proceed independently of Chapter 74?*

Almazan contends that a cause of action filed pursuant to Chapter 321 is a "civil rights claim" that "stands separate and apart from any health care liability claim." She argues that even if a cause of action asserted under Chapter 321 technically comes within the definition of a health care liability claim, Chapter 321 claims are outside the ambit of Chapter 74 and are not subject to its requirements.

The only direct authority Almazan cites for the proposition that a Chapter 321 claim for violation of the patient bill of rights may proceed independently of Chapter 74 is this court's 2002 opinion in *Zuniga v. Healthcare San Antonio, Inc.*, 94 S.W.3d 778 (Tex. App.—San Antonio 2002, no pet.). Zuniga was an involuntary in-patient at Laurel Ridge who was sexually assaulted by another patient. She sued, alleging causes of action for medical negligence, common law negligence, and breach of the patient bill of rights under Chapter 321. This court held that Zuniga's common law negligence and premises liability claims were not based on the

rendition of medical treatment and did not implicate a breach of an accepted standard of safety, and therefore were not health care liability claims. *Id.* at 783. Having found Zuniga's claims were not health care liability claims, we also concluded that Zuniga's Chapter 321 claims could proceed because Chapter 321 does not contain an expert report requirement and does not expressly require compliance with article 4590i (the predecessor to Chapter 74). *Id.*

Three years later, the Texas Supreme Court in *Diversicare* held that when the underlying nature of the claim alleged is one for breach of the standard of care for a health care provider, the claim is a health care liability claim, without regard to the form of the pleading. 185 S.W.3d at 847-49. The court expressly disapproved of several appellate court decisions, including *Zuniga*, which had held that patient's claims for assault based on allegations of inadequate monitoring, supervision, and health care, were premises liability claims and not health care liability claims. *Id.* at 853. The court rejected the argument that a plaintiff could allege a claim for premises liability based on inadequate health care independently of a health care liability claim because that "would open the door to splicing health care liability claims into a multitude of other causes of action with standards of care, damages, and procedures contrary to the Legislature's explicit requirements." *Id.* at 854. The Supreme Court has since held that "[w]hen the underlying facts are encompassed by provisions of [Chapter 74] in regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims. Application of [Chapter 74] cannot be avoided by artfully pleading around it or splitting claims into both health care liability claims and other types of claims." *Yamada*, 335 S.W.3d at 193-94. In light of these decisions, the *Zuniga* opinion is no longer authoritative support for appellant's position.

Almazan next asserts that people with mental illness are entitled to some constitutional protections not afforded persons receiving general medical care.[3] She argues that because the patient bill of rights in Chapter 321 addresses some of these constitutional issues "Chapter 74 must fall to the wayside" in the face of a cause of action brought under Chapter 321. She contends that the differences in the remedies authorized by Chapter 321 evidences legislative intent that it control over Chapter 74. However, Almazan does not point to any language in Chapter 321 that supports her argument about the legislative intent. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) ("the Legislature expresses its intent by the words it enacts and declares to be the law"). Moreover, although Almazan repeatedly asserts in her brief that her claim is a "civil rights claim" for "constitutional deprivation," this case does not involve any claimed constitutional violations — Almazan has not alleged any state action, nor has she expressly alleged that Laurel Ridge, a private entity that did not invoke civil commitment procedures, has violated her constitutional rights. Finally, Almazan's argument that the constitutional underpinnings of Chapter 321 precludes claims brought under that chapter from being treated the same as other health care liability claims was expressly rejected by our sister court in *Texas Cypress Creek Hospital, L.P. v. Hickman*, 329 S.W.3d 209, 216 (Tex. App.— Houston [14th Dist.] 2010, pet. denied). Likewise, the El Paso court of appeals held a cause of action for sexual exploitation by a mental health services provider brought under chapter 81 of the Civil Practice and Remedies Code was a health care liability claim subject to the requirements of Chapter 74. *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 35-36 (Tex.

---

[3] *See, e.g.,* TEX. CONST. art. I, § 15-a (providing that "[n]o person shall be committed as a person of unsound mind except on competent medical or psychiatric testimony" and that Legislature may provide procedures for waiver of trial by jury in civil commitment proceedings); *O'Connor v. Donaldson*, 422 U.S. 563, (1975)(holding State's involuntary civil commitment of individual who is not danger to himself or others unconstitutionally violates liberty interest); *Wyatt v. Aderholt*, 503 F.2d 1305, 1313-14 (5th Cir. 1974)(holding "the provision of treatment to those the state has involuntarily confined in mental hospitals is necessary to make the state's actions in confining and continuing to confine those individuals constitutional").

App.—El Paso 2006, no pet.). Chapter 81 was enacted in 1993, by the same Legislature that enacted Chapter 321 of the Health and Safety Code, and creates a private cause of action for sexual exploitation by a mental health service provider. Act of May 29, 1993, 73rd Leg., R.S., ch. 573, § 2.01, 1993 Tex. Gen. Laws 2155, 2159 (amended 1997, 1999, 2001, 2011) (current version at TEX. CIV. PRAC. & REM CODE § 81.001 *et seq.* (West 2011)). Like Chapter 321, Chapter 81 authorizes an award of uncapped actual damages, exemplary damages, and attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 81.004 (West 2011). When a claim for sexual exploitation under Chapter 81 otherwise meets the definition of a health care liability claim, it must be dismissed if the expert report required by section 74.351 is not filed. *NCED*, 214 S.W.3d at 37.

Lastly, Almazan argues that to the extent there is a conflict between Chapter 74 and Chapter 321, Chapter 321 prevails because it was enacted after the Legislature began to regulate health care liability claims and is the more specific statute. Initially, we agree with Almazan that, as relevant to this appeal, there is no conflict between the statutes. The only provisions of Chapter 74 at issue in this appeal are the requirement in section 74.351 that an expert report be filed and the mandate that the trial court dismiss a health care liability claim if a complying report is not timely filed. Although Chapter 321 does not contain its own expert report requirement, imposing the requirement on a Chapter 321 claim does not conflict with a provision of that statute.

If, as Almazan sometimes asserts, applying the expert report requirement is fundamentally inconsistent with Chapter 321, then we agree with Laurel Ridge that general principles of statutory construction compel the conclusion that Chapter 74 prevails. The requirement in former article 4590i, § 13.01(d) that an expert report be filed in all health care

liability claims and the enactment of Chapter 74 both occurred *after* Chapter 321 was enacted. *See* Act of May 25, 1993, 73rd Leg., R.S., ch. 705, § 1.01, 1993 Tex. Gen. Laws 2743, 2743 (current version at TEX. HEALTH & SAFETY CODE § 321.001 *et seq.* (West 2010)); Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (former art. 4590i, § 13.01(d),(e) (repealed 2003)); Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847 (amended 2005, 2007, 2011) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 *et seq.*(West 2011)). In its 2003 recodification, the Legislature expressly declared that Chapter 74 prevails to the extent of any conflict with another law. TEX. CIV. PRAC. & REM. CODE ANN. § 74.002(a). By this "express, unambiguous conflicts-of-law provision," "the Legislature explicitly provided that this statute overrides any conflicting law or rules of procedure." *Molinet*, 356 S.W.3d at 414; *In re Jorden*, 249 S.W.3d 416, 420 (Tex. 2008); *see* TEX. GOV'T CODE ANN. § 311.026(b) (West 2005) (where there is conflict between general provision and special or local provision, general provision prevails if it is the later enactment and Legislature manifests intent that general provision prevail). We therefore reject Almazan's contention that a cause of action under Chapter 321 proceeds independently of Chapter 74 when the claim asserted is a health care liability claim within the meaning of Chapter 74.

## CONCLUSION

The trial court found Almazan's expert report inadequate and gave her an opportunity to cure the deficiencies. The court subsequently found the supplemental expert report so deficient that it constituted no report at all, and dismissed all Almazan's claims except her Chapter 321 cause of action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b),(c) (West 2011). The factual complaints underlying all of Almazan's causes of action concern the same set of

circumstances and are all health care liability claims. We therefore hold Almazan failed to file an expert report as required by section 74.351, and the trial court should have dismissed all her claims. *See Yamada*, 335 S.W.3d at 197-98; *Hickman*, 329 S.W.3d at 218.

We reverse the part of the trial court's order that denied Laurel Ridge's motion to dismiss Almazan's Chapter 321 cause of action. We remand the case to the trial court with instructions to dismiss Almazan's claims with prejudice and to consider Laurel Ridge's request for attorney's fees and costs relative to the Chapter 321 cause of action.

Steven C. Hilbig, Justice