

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00124-CV

**CHRISTUS SANTA ROSA HEALTH CARE CORPORATION**,
Appellant

v.

Jennifer Marie **BOTELLO** and Edmond M. Ybarra Individually
and as Next Friends of Yzabella Marie Ybarra, a Minor Child,
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-18783
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:   Sandee Bryan Marion, Justice

Sitting:   Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: November 13, 2013

REVERSED AND RENDERED

In the underlying health care liability lawsuit, appellees sued appellant for injuries allegedly sustained by Yzabella Marie Ybarra while she was hospitalized in November 2010 at Christus Santa Rosa Hospital. Appellant filed a motion to dismiss asserting appellees failed to timely serve their expert report. The trial court denied the motion, and this appeal ensued. In an opinion and judgment issued September 18, 2013, this court reversed the trial court's order, rendered a dismissal in favor of appellant, and remanded for consideration of attorney's fees and costs. On October 11, 2013, this court denied appellees' motion for rehearing. On November 1,

2013, appellant filed a notice with this court stating it did not intend to seek fees or costs from appellees, and asking that this court's judgment and mandate reflect this intention. We withdraw our opinion and judgment of September 18, 2013 and issue this opinion and judgment in their place to reflect only a reversal and rendition in favor of appellant.

## PROCEDURAL BACKGROUND

Appellees filed their original petition in this health care liability case against appellant and two physicians on July 5, 2012. Therefore, appellees' 120-day deadline to serve any expert report(s) was November 2, 2012. Appellees served appellant with their first original petition and their expert's report and curriculum vitae on July 20, 2012. On August 12, 2013, appellant objected to the expert report as insufficient. Pursuant to a Rule 11 agreement, appellees withdrew the report on September 14, 2012 and appellant agreed to pass the hearing on its motion to dismiss. The agreement also provided that appellees could re-file their expert report "no later than October 25, 2012" and appellees' discovery requests propounded on appellant were "stayed until an Expert Report is filed as to" appellant.

On October 24, 2012, appellees filed a Notice of Nonsuit Without Prejudice on all their claims against all three defendants. Five days later and with all defendants non-suited, appellees' attorney faxed appellant's attorney a copy of the pre-suit notice letter appellees' counsel was mailing to one of the co-defendant doctors, along with two expert reports. On November 19, 2012, appellees filed a new original petition against appellant and only one of the two doctors originally sued. Appellees served appellant with this petition and the same two expert reports on December 4, 2012. Appellees served a third expert report on January 10, 2013.

On January 25, 2013, appellant again moved for a dismissal on the grounds that appellees' nonsuit did not toll the 120 days in which to file an expert report and serving an expert report on a nonsuited defendant does not constitute service on a "party or the party's attorney"; therefore,

appellees' expert reports were not timely served. After a hearing, the trial court denied appellant's motion to dismiss, and this appeal ensued.

## DISCUSSION

Appellant's assertion that appellees' expert reports were untimely is premised on its argument that appellees' 120-day period in which to serve the reports was triggered on the date the first original petition was filed on July 5, 2012, and this deadline was not tolled by a nonsuit or satisfied by serving the reports when no lawsuit was pending following the nonsuit. Ordinarily, we review the trial court's ruling on a motion to dismiss a healthcare liability claim for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Texas Laurel Ridge Hosp., L.P. v. Almazan*, 374 S.W.3d 601, 604 (Tex. App.—San Antonio 2012, no pet.). However, the issue we address here requires us to construe provisions of the Texas Medical Liability Act ("Act"), which is a question of law we review de novo. *Stroud v. Grubb*, 328 S.W.3d 561, 563 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

The Act requires a claimant in a health care liability case to serve, "not later than the 120th day after the date the original petition was filed, . . . on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). If an expert report has not been served within the 120–day deadline, the trial court must dismiss "the claim with respect to the physician or healthcare provider, with prejudice to the refiling of the claim," provided that the "affected physician or health care provider" files a motion to dismiss. *Id.* § 74.351(b). Under the Act, the parties may mutually agree to a different deadline if they choose, and the trial court has the authority to grant a single thirty-day extension when a report is timely filed but is deficient in some other respect. *Id.* § 74.351(a), (c). However, there are no other statutory exceptions to the 120–day deadline. *See*

*Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009). By enacting this strict deadline, the Legislature created "a statute of limitations type deadline within which expert reports must be served." *Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007). In other words, if the report is not filed by the deadline, a trial court may not grant extensions to file and has no discretion to deny a motion to dismiss filed by a health care provider. *Id.* at 319-20.

Courts have interpreted the language that a claimant must serve the expert report(s) "not later than the 120th day after the date the *original petition* was filed" to mean 120 days from the first-filed petition naming a physician or health care provider as a party to the lawsuit for the first time. *Stroud*, 328 S.W.3d at 565-66 ("120 days runs from the first petition to assert a claim against the particular defendant for whom an expert report is required"); *Osonma v. Smith*, No. 04-08-00841-CV, 2009 WL 1900404, at *2 (Tex. App.—San Antonio July 1, 2009, pet. denied) (mem. op.) (same). Here, the second original petition filed by appellees was not the first petition to name appellant as a party. If the second original petition had named appellant as a defendant to the suit for the first time, there is no question that the 120 days as to appellant would have begun to run from the date of the filing of the second petition, November 19, 2012. However, the second original petition asserted the same health care liability claims against appellant as were asserted against appellant in the first original petition. In fact, both petitions referenced May 11, 2011 as the date appellees served appellant with written notice of their health care liability claim. Thus, this appeal presents two narrow questions: (1) whether, following a nonsuit, the 120-day period is tolled until the filing of a second original petition asserting the same claims against the same defendant named in the first original petition and (2) whether an expert report is timely-served if served on a nonsuited defendant because, despite the nonsuit, the defendant remains a "party" while the trial court retains plenary jurisdiction over the original suit.

After this appeal was submitted, the Texas Supreme Court issued its opinion in *CHCA Woman's Hospital, L.P. v. Lidji¸* No. 12-0357, 2013 WL 3119577 (Tex. June 21, 2013), answering the first question. In that case, Lidji asserted his nonsuit tolled the running of the 120 days until he re-filed suit against CHCA, which, instead of triggering a new 120-day window for serving an expert report, triggered the time remaining from his original 120-day time period: four days. Lidji argued that, considering the language in other sections of Chapter 74, it was clear the Legislature intended for the 120-day time period to run only when a lawsuit was actively pending. He contended that because he filed the second suit and simultaneously served the expert report on CHCA, he served the report on the day the expert-report time period resumed running following the nonsuit, and, therefore, he timely served CHCA with the report. The Supreme Court held "that, when a claimant nonsuits a claim governed by [the Act] before the expiration of the statutory deadline to serve an expert report and subsequently refiles the claim against the same defendant, the expert-report period is tolled between the date nonsuit was taken and the date the new lawsuit is filed." *Id.* at \*5.

Here, appellees nonsuited their claims against all defendants nine days before the expiration of the 120 days that began to run from the filing of the first original petition. Thus, appellees' nonsuit tolled the period so as to allow an additional nine days in which to serve the expert report. *See id.* However, appellees did not serve appellant or appellant's counsel with the expert reports until fifteen days after filing the second original petition. Therefore, appellees failed to serve the expert reports within the remaining nine days.

Nevertheless, appellees contend they timely served the expert reports within the remaining nine days because the reports were attached to the second original petition that was filed on November 19, 2012. Section 74.351 expressly requires that a claimant "*serve on each party or the party's attorney* one or more expert reports, with a curriculum vitae of each expert listed in the

report for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE § 74.351(a). Several courts have considered this same issue, noting that section 74.351(a) does not define the word "serve," but concluding the Texas Rules of Civil Procedure govern "all actions of a civil nature," unless a specific exception applies, TEX. R. CIV. P. 2, and that the Legislature intended the term "serve" to have the same meaning that it carries in Rule of Civil Procedure 21a. *See Poland v. Ott*, 278 S.W.3d 39, 46-48 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing therein other cases holding same); *see also Zanchi v. Lane* No. 11-0826, 2013 WL 4609113, at *5 (Tex. Aug. 30, 2013) ("We need not decide whether service in a manner other than that authorized by Rule 21a satisfies the [Act's] requirement to 'serve' an expert report . . . ."). Rule 21a prescribes four methods by which a party may serve another: (1) delivery in person, by agent, or by courier-receipted delivery; (2) certified or registered mail; (3) telephonic document transfer; or (4) such other manner as the court in its discretion may direct. TEX. R. CIV. P. 21a. Because nothing in section 74.351 allows for an exception to the requirement of service upon the party or the party's attorney, we hold that attaching an expert report to the petition filed with the district clerk does not satisfy section 74.351(a)'s requirement that the report be *served*.

As to the second question we address in this appeal, appellees argue that because the trial court retained plenary power over the originally-filed lawsuit for a period of at least thirty days following the nonsuit—until November 23, 2012—appellant remained a "party" for that same period of time. Therefore, appellees conclude, the reports faxed to appellant's counsel on October 29, 2012 were timely-served. Appellant counters that because no lawsuit against it was pending on October 29, 2012, serving its attorney with a copy of the expert reports in the interim between the two suits did not comply with the Act.

Appellees rely on the Texas Supreme Court's opinion in *Crites v. Collins*, 284 S.W.3d 839 (Tex. 2009) (per curiam), which considered whether a physician could move for sanctions even

though the plaintiff had previously nonsuited the physician. According to appellees here, the *Crites* Court "made it absolutely clear in a medical negligence case that the Plaintiff and Defendant remain parties for the 30 days after a nonsuit." We disagree with appellees' interpretation of *Crites*.

In that health care liability lawsuit, the plaintiffs voluntarily nonsuited their claims against the defendant health care provider after failing to serve an expert report within the 120-day deadline. Before the trial court entered an order of nonsuit, the defendant filed a motion for dismissal with prejudice and for attorney's fees and costs as sanctions for noncompliance with the expert report deadline. A month after the trial court signed the order of nonsuit, it issued an order denying the defendant's motion. The court of appeals affirmed, concluding that the filing of a notice of nonsuit precludes consideration of a subsequent motion for statutory sanctions. On appeal to the Supreme Court, the defendant argued Chapter 74 sanctions are mandatory because the plaintiffs failed to file an expert report within 120 days of filing suit and defendant's entitlement to these sanctions arose the moment the plaintiffs failed to timely-file the report. The Court agreed and held "sanctions authorized under the [Act] remain available following a voluntary nonsuit filed after the expert deadline" provided the motion for sanctions is filed within the trial court's plenary jurisdiction. *Id.* at 840, 843. The Court did not consider or address, even in dicta, whether the defendant remained a "party."

Appellees also rely on Texas Rules of Civil Procedure 329b and 162. Rule 329b provides that a "trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed." TEX. R. CIV. P. 329b(d). A motion for new trial may be filed by any party. TEX. R. CIV. P. 329b(e). Also, a plaintiff's right to nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all

costs taxed by the clerk," and a dismissal "shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal." TEX. R. CIV. P. 162. Thus, appellees contend that under these rules appellant remained a "party" to the originally-filed lawsuit despite being nonsuited because appellant retained the ability to file a motion for new trial, re-urge its previously-filed motion for attorney's fees, or file a new motion for sanctions. Appellees also contend appellant remained a "party" because appellant filed an amended answer to an interrogatory.

The word "party" is not defined in section 74.351 or Chapter 74 of the Texas Civil Practice and Remedies Code. "Any legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." TEX. CIV. PRAC. & REM. CODE § 74.001(b). Recently, in *Zanchi*, the Texas Supreme Court construed "the term 'party' in section 74.351(a) to mean one named in a lawsuit." *Zanchi*, 2013 WL 4609113, at *1. In that case, Zanchi was named as a defendant in a healthcare liability suit filed on April 21, 2010. He was not served with process until September 16, 2010, arguably because he was actively evading service. However, in the interim, the plaintiff mailed the expert report and curriculum vitae to Zanchi at five different locations within the statutory deadline; four of the mailings were returned unclaimed and one was signed for by someone at the hospital. Zanchi moved to dismiss arguing he was not a "party" to a healthcare liability claim until he is served with process, waived service, or otherwise appeared in a lawsuit and, therefore, any transmittal of the expert report before service did not satisfy section 74.351(a). *Id.* The Supreme Court disagreed and held "in the context of the [Act], the term 'party' means one named in a lawsuit and that service of the expert report on Zanchi before he was served with process satisfied the [Act's] expert-report requirement." *Id.* at *2. The Court also noted "Zanchi's twenty-one day period for objecting to the report did not begin to run until he was served with process . . . ." *Id.* at *5.

Here, there is no dispute appellant was a named "party" in both the first original petition and the second original petition, and that appellant was served with citation after the filing of both petitions. During the period of the nonsuit, appellees faxed appellant's attorney a copy of their pre-suit notice against another defendant and two expert reports on October 29, 2012. The question is whether appellant was a "party" to a *pending* lawsuit during the interim between the October 24, 2012 nonsuit and the filing and service of the November 19, 2012 second original petition.

A nonsuit extinguishes a case or controversy from "the moment the motion is filed" or an oral motion is made in open court; the only requirement is "the mere filing of the motion with the clerk of the court." *Shadowbrook Apts. v. Abu-Ahmad*, 783 S.W.2d 210, 211 (Tex. 1990) (per curiam). If a defendant has a pending claim for affirmative relief, however, the plaintiff's nonsuit is effective for its own claims, but not for the defendant's claims. Thus, barring an affirmative claim against the plaintiff, the effect of a nonsuit is to extinguish the case or controversy regarding the plaintiff's claims without an adjudication of their merits—i.e., the nonsuit's effect is to render the merits of the plaintiff's case moot. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006); *see also Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) (holding nonsuit terminates case from the moment it is filed). Nonsuits have also been described as putting the parties back in the position they were in before the suit was filed. *See, e.g., Crofts v. Court of Civil Appeals for the Eighth Supreme Judicial Dist.*, 362 S.W.2d 101, 104 (Tex. 1962) (noting nonsuit "places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought"); *Hagberg v. City of Pasadena*, 224 S.W.3d 477, 484 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("When a party nonsuits a legal action, the parties are put back in the same positions as before the filing of the suit."); *Salinas v. Aguilar*, No. 04-11-00260-CV, 2012 WL 848147, *1 (Tex. App.—San Antonio Mar. 14, 2012,

no pet.) (mem. op.) ("As a result of the nonsuit, it was as if [plaintiff] had never brought suit in the first place.").

Because a nonsuit extinguishes a case or controversy from the moment it is filed, after the nonsuit here there were no claims pending against appellant and the merits of appellees' case became moot. Therefore, we conclude appellant's status as a "party" under the first lawsuit ended upon nonsuit and appellant did not again become a "party" to any "case or controversy" until claims were asserted against it in the second original petition. *See Daughters of Charity Health Servs. of Austin v. Carroll*, No. 03-08-00187-CV, 2008 WL 4951247, *1 n.3 (Tex. App.—Austin Nov. 21, 2008, no pet.) ("We note that [appellant] was a party to this cause only by virtue of the claims filed by Carroll. Those claims have been nonsuited. Therefore, [appellant] is no longer a party."); *see also CHCA Woman's Hosp.*, 2013 WL 3119577, *4 ("Construing the [Act] to require service of an expert report in the absence of a pending lawsuit would thus give rise to a host of procedural complications that the statute does not envision and cannot adequately address . . . Further, when a claim is nonsuited, the defendant against whom the claim was asserted does not incur additional litigation expenses unless and until the claim is refiled. Any extra expense incurred by the defendant as a result of the nonsuit and refiling will likely be minimal, as a claimant's lawsuit on a health care liability claim may only be maintained for a finite period of time without service of the expert report.").

Appellees also contend appellant remained a "party" based on its amended response to an interrogatory faxed to appellees during the period of the nonsuit on November 5, 2012. The record contains email correspondence between the parties' attorneys about various issues, including appellees' attempts to correctly identify the physicians and their employers. In an October 16, 2012, email from appellees' attorney, Scott Sanes, to appellant's attorney, Lori Hanson, Sanes stated: "I would like to drop the names of the UT employed physicians and just name those who

were either independent contractors or employed by [appellant]." Later that same day, Sanes again emailed Hanson, stating: "[I] know you are telling me that none of the doctors were Christus employees. . . . If you would just answer the interrogatory . . . I can refrain from naming any of the UT doctors in the amended petition or alleging Christus was responsible for them." Hanson responded, reminding Sanes that discovery was "stayed pending a new expert report as to the hospital." On October 21, Sanes emailed Hanson that he "would like to nonsuit the hospital. However, it requires a full and accurate answer to the interrogatory you just answered which includes the name and employer of the resident that signed the discharge order . . . ." Shortly after this email, Hanson responded, "I told you I am trying to do that. Your expert has nothing on the hospital so nonsuit us." On October 23, 2012, Hanson emailed Sanes that she would send him the amended interrogatory response. On November 5, 2012, Sanes informed Hanson that she had incorrectly identified the doctor who discharged Yzabella as Dr. Aaron Reeves, a Corpus Christi physician. Sanes had discovered the doctor's name was actually Dr. Stephanie Reeves, and he stated in his email: "I do not want to bring suit against the wrong physician based on your erroneous response to discovery. If the correct 'Dr. Reeves' on the discharge note was Stephanie Reeves, I need to know her employer on the date of discharge since, if she was working for UT, we should not name her in the suit either." That same day, Hanson faxed to Sanes an amended interrogatory answer identifying Dr. Stephanie Reeves as one of the physicians involved in Yzabella's care. We have found no authority that supports appellees' argument that correcting a discovery response— at the plaintiff's request—results in a nonsuited defendant remaining a "party."

Because appellant was not a party to any "case or controversy" on October 29, 2009, then faxing a copy of the expert reports to appellant on that date does not satisfy the requirement of "*serv[ing] on each party or the party's attorney* one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a

liability claim is asserted." Tex. Civ. Prac. & Rem. Code § 74.351(a). Also, pre-suit service on a healthcare provider does not transform the provider into a "party." *Poland*, 278 S.W.3d 48-51 (explaining why pre-suit service does not comply with statute); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 873-74 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (stating party's receipt of expert report before claim filed against it did not establish compliance with service requirements of section 74.351(a)).

Finally, appellees raise an equitable argument based on their contention that the nonsuit was based on appellant's response to the interrogatory mentioned above, which contained a "misrepresentation." According to appellees, on October 24, 2012, sworn interrogatories from appellant indicated that Dr. Aaron Reeves signed the discharge papers when, in fact, Dr. Stephanie Reeves signed the papers. Appellees contend they nonsuited the claims against appellant "to consider a venue change since Dr. Aaron Reeves resides in Corpus Christi."

Section 74.351's requirement that a plaintiff serve an expert report on each party within 120 days is not subject to any good-faith exception. *See Offenbach v. Stockton*, 285 S.W.3d 517, 521 (Tex. App.—Dallas 2009) ("Unlike former article 4590i, which gave a claimant two opportunities to seek an extension of time in which to furnish an expert report, former section 74.351(a) does not contain a 'due diligence' or 'good cause' exception." (citations omitted)), *aff'd*, 336 S.W.3d 610 (Tex. 2011); *Estate of Regis v. Harris Cnty. Hosp. Dist.*, 208 S.W.3d 64, 68 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("In repealing article 4590i and enacting Civil Practice and Remedies Code chapter 74, the legislature specifically removed the trial court's ability to grant an extension based on a plaintiff's diligence."); *Kendrick v. Garcia*, 171 S.W.3d 698, 705 (Tex. App.—Eastland 2005, pet. denied) ("As a result of the omission of the 'accident or mistake' exception in Section 74.351, we conclude that the new statute precludes the existence of a good faith exception to the requirement of timely serving expert reports."). Rather, section 74.351

creates only two exceptions to the 120–day deadline: (1) the parties agree to an extension; or (2) the trial court is permitted to grant one thirty-day extension to the plaintiff to cure a deficient but otherwise timely report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (c); *Badiga*, 274 S.W.3d at 685. Neither exception applies in this case. The parties did not agree to extend the deadline past the original November 2, 2012 deadline, and, although appellant claimed the expert report served with the first original petition was deficient, appellees nonsuited rather than invoke the thirty-day extension.

## CONCLUSION

Based on the foregoing, we reverse the trial court's order and render judgment dismissing appellees' health care liability claims against appellant with prejudice. Because appellant has affirmatively stated it does not intend to seek attorney's fees and costs against appellees pursuant to Civil Practice and Remedies Code section 74.351(b)(1) no remand is necessary.

Sandee Bryan Marion, Justice