

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00310-CV

Enrique **LOPEZ** d/b/a Maternidad La Piedad,
Appellant

v.

Marina Edith **OSUNA**, Individually and as Next Friend for S.E.G., Minor Child,
and Benito Gonzalez Cantu,
Appellees

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 13-10-28869-MCVAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:      Marialyn Barnard, Justice

Sitting:          Catherine Stone, Chief Justice
                 Karen Angelini, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  November 26, 2014

REVERSED AND REMANDED

This is an interlocutory appeal from a trial court's order denying a motion to dismiss filed by appellant Enrique Lopez d/b/a Maternidad La Piedad ("Lopez").  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2014).  Lopez filed the motion claiming appellees Marina Edith Osuna, Individually and as Next Friend of S.E.G., Minor Child, and Benito Gonzalez Cantu (collectively "Osuna") failed to file an expert report as required by section 74.351 of the Texas Civil Practice and Remedies Code.  On appeal, Lopez contends the trial court erred in denying his motion to dismiss because Osuna's claims are healthcare liability claims.  We reverse and remand.

## BACKGROUND

According to Osuna, she went to La Piedad Maternidad, a clinic using alternative birthing methods, for a consultation. She met with Lopez to discuss child delivery using a midwife. Osuna claimed Lopez determined she was due to give birth in approximately four months. Osuna provided an $80.00 deposit to the clinic and was told the total cost for the delivery would be $2,250.00. The total was payable in weekly installments leading up to Osuna's delivery date. Osuna claimed it was understood that the total would be paid prior to the delivery and in return for her payment, she "would receive the care and attention as promised her in contract with them." However, Osuna claimed Lopez collected the money for his own benefit, without any "intention of seeing her through her pregnancy."

Osuna alleged that when she began experiencing labor pains, she and her husband went to the clinic to see Lopez — the "Director and alleged Licensed Mid Wife" of the clinic. Lopez "checked" and advised Osuna she would not deliver for another day or two, sending her home "with little regard for the pain she was experiencing." Later that day, Osuna alleged her pain became more frequent and intense; she was sure she was in labor. Her husband rushed her to the clinic. Osuna's husband was speeding and was picked up on police radar. Osuna's husband did not stop, and the police car gave chase.

During this time, Osuna told her husband the baby was coming. She removed her pants and gave birth to the child in the vehicle. When the couple arrived at the clinic — "police in tow" — the baby was on the floor of the truck, connected to the umbilical cord and unresponsive. According to Osuna, her husband called the clinic from outside, but service was refused "because the baby was born outside of the facility" and because the clinic believed Osuna had already called EMS.

Osuna asserted in her petition that Maverick County firefighters "pleaded" with those inside the clinic to provide emergency supplies for the care of Osuna and the baby, but were refused. Firefighters provided medical assistance and transported Osuna and the baby to Fort Duncan Medical Center.

Based on the foregoing, Osuna filed suit alleging Lopez and the clinic failed to provide any "of the medical assistance for the delivery of her child" for which she had "prepaid." According to Osuna, Lopez agreed to provide certain services to her in connection with her pregnancy, labor and delivery, and postpartum care, but failed or refused to provide the promised services. Osuna alleged the baby suffered "serious developmental delays and hardship" due to Lopez's actions. In her original petition, Osuna alleged claims for negligence, gross negligence, violations of the Texas Deceptive Trade Practices Act, fraud, fraud in the inducement, misrepresentation, constructive fraud, conversion, and unjust enrichment.[1]

Osuna did not file an expert report pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2014). When no report was filed, Lopez filed a motion to dismiss on the ground Osuna had not filed the required report. *See id.* § 74.351(b). At the conclusion of the hearing on Lopez's motion, the trial court stated: "The Court finds that the Plaintiffs' claims are not health care liability claims and not subject to the expert reporting requirements. Accordingly, the motion to dismiss is hereby denied." Lopez then perfected this appeal.

---

[1] However, at the hearing on Lopez's motion to dismiss, counsel for Osuna specifically stated Osuna was dropping her claims for negligence and gross negligence. Moreover, on the morning of the hearing, at 9:30 a.m., Osuna filed a first amended petition. That petition asserted claims for violations of the Texas Deceptive Trade Practices Act, fraud, fraud in the inducement, and misrepresentation. Osuna's other claims were omitted from the amended petition.

**ANALYSIS**

As noted above, Lopez contends in this appeal that the trial court erred in denying his motion to dismiss. Specifically, Lopez argues Osuna's claims *are* health care liability claims and she was required to file an expert report pursuant to section 74.351 of the Civil Practice and Remedies Code. Lopez asserts Osuna cannot use artful pleading to escape expert reporting requirements mandated by section 74.351.

Osuna counters, arguing her claims are not health care liability claims because: (1) it is uncertain Lopez is a licensed midwife; (2) her claims do not arise from alleged "lack of treatment"; and (3) under a "tie-in" provision of the Texas Administrative Code, she is permitted to assert claims under the DTPA against birthing centers and midwives. Citing a case involving the doctrine of *res ipsa loquitor*, she also contends that even if we determine her claims are health care liability claims, she is not required to file an expert report because an expert is not necessary when the alleged breach of a medical duty is plainly within the common knowledge of laymen.

### *Standard of Review and Applicable Law*

Generally, we review a trial court's ruling on a section 74.351(b) motion to dismiss for an abuse of discretion. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 665 (Tex. 2010); *Hill Country San Antonio Mgmt. Servs., Inc. v. Trejo*, 424 S.W.3d 203, 208 (Tex. App.—San Antonio 2014, pet. dism'd); *Carpinteyro v. Gomez*, 403 S.W.3d 508, 510 (Tex. App.—San Antonio 2013, pet. denied). However, when our review turns on a question of law, we must apply a de novo standard of review. *Trejo*, 424 S.W.3d at 208; *Carpinteyro*, 403 S.W.3d at 510. Whether a claim is a health care liability claim involves statutory construction and is, therefore, a question of law. *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 757 (Tex. 2014). Thus, in this case we will conduct a de novo review. *See id.*

"When construing a statute, we give it the effect the Legislature intended." *Id.* As stated by the supreme court, the paramount manifestation of the Legislature's intent is found in the plain meaning of the statute's text. *Id.* at 757–58. Given the broad language of the Medical Liability Act, the Legislature has shown its intent that the statute "have expansive application." *Id.* at 758.

Section 74.351(a) of the Texas Civil Practice and Remedies Code mandates that in a "health care liability claim," a claimant must serve on each party or his attorney one or more expert reports. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If a claimant fails to serve the required report, the trial court must — upon the motion of the affected physician or health care provider — dismiss the claim with prejudice and award attorney's fees and costs. *Id.* § 74.351(b). Chapter 74 defines a "health care liability claim" as:

> A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). Pursuant to this statutory definition, there are three elements in a healthcare liability claim: (1) the defendant is a physician or health care provider; (2) the claims concern treatment, lack of treatment, or some other departure from accepted standards of medical care, health care, or safety; and (3) the defendant's act or omission proximately caused the claimant's injury or death. *Sok*, 426 S.W.3d at 758; *Tex. Laurel Ridge Hosp., L.P. v. Almazan*, 374 S.W.3d 601, 606 (Tex. App.—San Antonio 2012, no pet.).

### *Application*

Based on *Sok*, we must undertake a three-step analysis and determine whether: (1) Lopez's actions or inactions caused Osuna's alleged injuries; (2) Lopez is a health care provider; and (3) Osuna's claims concern her treatment, lack of treatment, or some other departure from accepted

standards of medical care or health care. *See Sok*, 426 S.W.3d at 758; *Almazan*, 374 S.W.3d at 606. There seems to be no dispute with regard to the element of causation — except as to whether an expert report is required. Thus, we proceed to determine whether Lopez is a health care provider and whether Osuna's claims concern her treatment, lack of treatment, or some other departure from accepted standards of medical care or health care. *See id.*

*Health Care Provider?*

Section 74.001(a)(12) defines a "health care provider" as "any person, partnership, professional association, corporation, facility or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: (i) a registered nurse; (ii) a dentist; (iii) a podiatrist; (iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; (vii) a health care institution; or (viii) a health care collaborative certified under Chapter 848, Insurance Code." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12). However, as this court has held, the statutory list of health care providers is not exclusive. *See San Antonio Extended Med. Care, Inc. v. Vasquez*, 327 S.W.3d 193, 197–98 (Tex. App.—San Antonio 2010, no pet.). And, as is relevant here, at least one appellate court has specifically held that midwives who are "duly licensed" are health care providers. *House of Yahweh v. Johnson*, 289 S.W.3d 345, 352 (Tex. App.—Eastland 2009, no pet.). In *Johnson*, the court held "midwifery" is recognized by the State of Texas as a health profession and because the statute includes health care providers as those duly licensed, certified, or registered to provide health care, a midwife is a health care provider. *Id.* We agree.

The statutes pertaining to midwives are found in Chapter 203 of the Texas Occupations Code. The Subtitle in which Chapter 203 appears is titled "Other Professions Performing *Medical Procedures*." TEX. OCC. CODE ANN. Subtitle C., §§ 201.001-206.351 (West 2012) (emphasis added). Section 203.002(7) defines "midwifery" as the practice of "providing the necessary supervision, *care*, and advice to a woman during normal pregnancy, labor, and the postpartum

period; conducting a normal delivery of a child; and providing normal newborn care." TEX. OCC. CODE ANN. § 203.002(7) (emphasis added). Given the Legislature's decision to include legislation pertaining to midwives under a subtitle relating to other professions that perform "medical procedures," and to include in the definition of midwifery the provision of "care" during pregnancy, labor, and the postpartum period, we hold the Legislature intended a duly licensed midwife to be included in the definition of health care provider — one who provides health care. Given the placement of legislation governing midwives, the definition of midwifery, and the definition of health care provider, we hold Lopez, as a duly licensed midwife, is a health care provider.

In her brief, Osuna questions Lopez's status as a duly licensed midwife. Osuna states that contrary to his contention, "[i]t is not undisputed that Lopez is a midwife." She claims the only proof provided by Lopez is an "outdated certificate," which does not constitute unequivocal proof that he is a licensed midwife.

The record establishes Lopez attached an affidavit to his motion to dismiss, which was filed with the trial court. In the affidavit, Lopez avers he is a "Licensed Midwife, duly licensed by the State of Texas" and was licensed by the State and in good standing "[a]t all times relevant to the . . . lawsuit" filed by Osuna. Attached to the affidavit, as stated therein, is a copy of a document from the Texas Midwifery Board, which certifies Lopez is a licensed midwife. The document is dated April 4, 1997, and attached to the license is a "renewal card," stating Lopez's license did not expire until March 28, 2014. According to the Texas Occupation Code, midwives must be licensed and must renew their licenses every two years. *Id.* §§ 203.251, 203.301. Thus, although the license might have been "outdated" as of the date of the hearing, the license was, in fact, current and valid during the events in questions and when Osuna filed suit. Osuna presented no evidence to dispute Lopez's status as a duly licensed midwife at the time of the underlying events or when suit was

filed.[2]   Accordingly, we hold Lopez is a healthcare provider, for the purpose of this lawsuit, pursuant to section 74.001(a)(12).  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12); *see also Johnson*, 289 S.W.3d at 352.

*Treatment, Lack of Treatment, or Some Other Departure from Standards of Health Care?*

Given the foregoing, the only remaining issue is whether Osuna's claims concern her treatment, lack of treatment, or some other departure from accepted standards of medical care or health care.  *See Sok*, 426 S.W.3d at 758; *Almazan*, 374 S.W.3d at 606.  Despite Osuna's protestations to the contrary, we hold her claims fall within the statutory description of a health care liability claim.

To determine whether Osuna's claims are based on Lopez's treatment, lack of treatment or some other departure from accepted standards of "medical care, or health care, or safety or professional or administrative services directly related to health care," we must examine the nature of the underlying claim.  *Almazan*, 374 S.W.3d at 606.  We are bound by neither the form of the pleading filed by Osuna, nor her characterization of her claims.  *See id.*  The Texas Supreme Court has repeatedly refused to allow a plaintiff, through artful pleading, to avoid the mandates codified in Chapter 74 by recasting a health care liability claim as some other cause of action.  *See, e.g., Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 845 (Tex. 2005) (holding patient's claim based on sexual assault by another patient caused by nursing home's negligence in failing to provide adequate supervision was health care liability claim); *Murphy v. Russell*, 167 S.W.3d 835, 839 (Tex. 2005) (holding claims doctor sedated patient after expressly representing and warranting he would not, could not be recast as DTPA claim); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541,

---

[2] As pointed by Lopez's counsel at oral argument, the website of the Texas Department of State Health Services establishes Lopez is currently licensed to practice midwifery through February 2016.  Texas Department of State Health Services, https://vo.ras.dshs.state.tx.us/datamart/detailsTXRAS.do?anchor=62de49c.0.4 (last visited Nov. 6, 2014).

542 (Tex. 2004) (holding negligent credentialing claims centered on quality of doctor's treatment and were inextricably intertwined with patient's medical treatment); *Earle v. Ratliff*, 998 S.W.2d 882, 893 (Tex. 1999) (holding that because patient's claimed misrepresentations all related to health care provider's treatment, DTPA claims were not viable); *Gormley v. Stover*, 907 S.W.2d 448, 449–50 (Tex. 1995) (per curiam) (holding dentist's statements to patient about treatment were claims for negligence and not actionable under DTPA); *Walden v. Jeffery*, 907 S.W.2d 446, 447–48 (Tex. 1995) (holding dentist's statement about fit of dentures was not actionable under DTPA because claims related to violation of standard of care); *but see Sorokolit v. Rhodes*, 889 S.W.2d 239, 242–43 (Tex. 1994) (holding plastic surgeon's promise that patient's appearance after surgery would be identical to specific photography was actionable under DTPA). As this court has held, "[i]f the alleged acts or omissions are an inseparable or integral part of the rendition of medical services or health care, then the claim is a health care liability claim." *Almazan*, 374 S.W.3d at 606.

Chapter 74 defines "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10). In addition to ascertaining the underlying nature of the claim when determining whether a cause of action is a health care liability claim, we also look to whether expert medical or health care testimony is necessary to prove or refute the merits of the plaintiff's claim against the health care provider. *Sok*, 426 S.W.3d at 760; *Almazan*, 374 S.W.3d at 607.

Osuna's current live petition alleges "the acts and procedures" of Lopez, "as described in the petition":

> ● violated the DTPA by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

● violated the DTPA by representing that goods or services that are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

● violated the DTPA by advertising goods or services with intent not to sell them as advertised;

● violated the DTPA by making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

● violated the DTPA by representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

● violated the DTPA by failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the conswner [sic] into a transaction into which the consumer would not have entered had the information been disclosed;

● violated the DTPA by breaching express and implied warranties; and

● violated the DTPA by engaging an unconscionable action or course of action; and

● constituted fraud, fraud in the inducement, and misrepresentation.

In other words, Osuna alleged that certain "acts and procedures" on the part of Lopez resulted in violations of the DTPA, fraud, fraud in the inducement, and misrepresentation.[3] Osuna provided a narrative of the "act and procedures" she contends entitle her to recover based on the

---

[3] Osuna contends that even if her DTPA claims are determined to be healthcare liability claims, her remaining claims are still viable because Lopez's motion to dismiss and his arguments on appeal are directed solely to the DTPA claims. Even if we agreed Lopez's motion and arguments encompass only the DTPA claims, Osuna's contention would be incorrect. The supreme court recently reiterated that "[w]hen a plaintiff asserts a claim that is based on the same underlying facts as an HCLC that the plaintiff also asserts, both claims are HCLCs and must be dismissed if the plaintiff fails to produce a sufficient report." *PM Management-Trinity NC, LLC v. Kumets*, 404 S.W.3d 550, 552 (Tex. 2013) (citing *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010)). All of Osuna's claims in this case are based on the same underlying facts. Thus, if we determine the DTPA claim is, in actuality, a health care liability claim, then all of Osuna's claims are health care liability claims. *See id.*

claims alleged. According to the petition, Lopez claimed to specialize in alternative birthing methods and care. Osuna went to Lopez for a consultation seeking delivery by a midwife. Lopez determined her gestational state and provided a due date. Osuna entered into a contract by which she would pay Lopez a certain amount prior to the delivery and she would receive "care and attention" as promised. The care promised included: clinic appointments, "attention during natural childbirth," "after care" for Osuna and the baby, and an umbilical cord blood test.

Osuna believed she was in labor prior to her scheduled delivery date, and went to Lopez's clinic. Lopez examined her but advised she should go home as she would not deliver for another day or two. According to Osuna, Lopez had "little regard" for her pain. Later in the day, her pain increased and her husband rushed her back to the clinic, but before she could reach the clinic, she delivered the baby in the truck, suffering extreme pain during the delivery. Osuna claimed the baby was still connected to the umbilical cord and firefighters had to provide care to her and the baby, including clamping the umbilical cord, because Lopez would not assist her or provide emergency supplies "to care for [her] and her infant." She asserted Lopez provided none of the "medical assistance" for which she had paid. As a result of Lopez's actions and inactions, she claimed to have experienced, among other things, "physical pain and suffering" and "mental anguish." Osuna pled that as a result of Lopez's conduct, the baby suffers from "serious developmental delays and hardship."

Upon review of her claims and the factual allegations supporting same, we hold Osuna's claims are health care liability claims. The essence of Osuna's cause of action is that Lopez, a health care provider, made certain promises and representations regarding services that would be "performed or furnished . . . for, to, or on behalf of" Osuna and her child during her pregnancy, including prenatal care (e.g., appointments at the clinic), delivery by a midwife, and postnatal care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10). At the core of Osuna's claims is

provision of health care during pregnancy. As Osuna's counsel argued during the hearing on the motion to dismiss, once the baby was born, there were actions Lopez should have taken, "[t]he umbilical cord has to be clamped. I mean, there were things that had to happen." Osuna cannot reasonably contend that a failure to clamp an umbilical cord as promised or to deliver a baby as promised is not a failure to provide health care. At its basest level, Osuna's allegations are that she entered into a contract pursuant to which Lopez promised to provide prenatal care, delivery of a baby by a licensed midwife, and postnatal care. Although Osuna guises her allegations as various forms of misrepresentations — statutory and common law — the representations or promises she alleges were fraudulent and breached, related to the base promise to provide health care during pregnancy and thereafter. We hold the alleged wrongful acts are inseparable from Lopez's rendition of health care.

In her brief, Osuna points to other services she claims Lopez promised to provide, but did not, e.g., spatial accommodations for Osuna's family before, during, and after the birth, a comfortable bed for delivery, and the preparation of the child's birth certificate. However, these peripheral services also fall within the definition of health care because they are professional or administrative services that are inseparable from the treatment or lack of treatment that is the true basis of Osuna's cause of action. *See, e.g., Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 184 (Tex. 2012) (recognizing that in 2003 Legislature redefined "health care liability claim" to include departures from accepted standards of medical care, or health care or *professional or administrative services directly related to health care*). The allegations pointed to by Osuna fall within the category of professional or administrative services related to health care. The sole purpose of a comfortable bed for delivery or nearby accommodations for the family are to provide comfort during delivery. As for completion of the birth certificate, when a midwife attends a birth — provision of health care — he must properly file the birth certificate. TEX. HEALTH & SAFETY

CODE ANN. § 192.003(a) (West 2010). Thus, filing the birth certificate is an administrative service related to attendance at the birth, i.e., related to the provision of health care.

Moreover, we hold Osuna's claims are health care liability claims because to establish or refute the claims will require some sort of medical expert. When analyzed, there can be little doubt Osuna's claims are allegations of a departure from accepted standards of health care. The validity of her contentions cannot be determined without reference to the standard of care applicable to a licensed midwife and any departure therefrom, which requires expert testimony from an expert familiar with such standards. *See Marks*, 319 S.W.3d at 662 (holding alleged departure from "accepted standards or medical care or health care" implicates professional standards of the respective care giver). The conduct about which Osuna complains occurred during a course of treatment by a health care provider. Whether the course of treatment was improper — including the failure to attend Osuna once she arrived at the clinic — and whether this resulted in the damages alleged, e.g., pain and suffering and developmental delays to the baby, is a subject matter for an expert. *See id.* Additionally, Osuna's damage claims for her alleged physical injury and developmental delays allegedly suffered by the baby require expert testimony. Without an expert, it is impossible to know whether an act or omission by Lopez was the proximate cause of the injuries to mother or child. Therefore, because an expert is required to prove or refute her claims, we hold Osuna's claims are health care liability claims. *See Tex. W. Oaks Hosp.*, 371 S.W.3d 182.

Osuna essentially contends her claims are not health care liability claims because she is not alleging Lopez violated a standard of care, but that he failed to fulfill promises and guarantees for which Osuna paid him. Osuna relies heavily on *Sorokolit v. Rhodes*, 889 S.W.2d 239 (Tex. 1994). In *Sorokolit*, the plaintiff alleged a doctor knowingly breached an express warranty of a particular result and knowingly misrepresented his skills and the results he could achieve. *Id.* at 242. The supreme court held these were not health care liability claims, but claims actionable under the

DTPA because they did not involve negligence. *Id.* at 242–43. However, since *Sorokolit*, the supreme court has routinely noted the limited scope of the *Sorokolit* holding and emphasized that if the underlying nature of the claim is negligence in the rendition of medical services, the plaintiff may not recast the allegations as a DTPA claim to avoid the statutory restrictions on health care liability claims. *See, e.g., MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40–41 (Tex. 1998); *Gormley*, 907 S.W.2d at 450. As discussed above, the underlying nature of Osuna's claim is negligence relating to the rendition of health care, or lack thereof, during and after her pregnancy. Thus, we hold *Sorokolit* is inapplicable.

Osuna contends, beyond her argument that her claims do not involve a "lack of treatment," that her claims are not health care liability claims subject to the expert reporting requirements of Chapter 74 because a provision in the Texas Administrative Code ("TAC"), an alleged "tie-in" statute, permits her to file suit against a midwife and birthing center under the DTPA. First, the provision of the TAC relied upon by Osuna is not a "tie-in" statute that would permit an action under the DTPA. Second, even if it is a "tie-in" statute that would permit an action under the DTPA against midwives and birthing centers, if the underlying basis of the plaintiff's claim is a health care liability claim, a plaintiff cannot creatively plead her claim so as to avoid the mandates of Chapter 74 of the Texas Medical Liability Act. *See, e.g., Diversicare*, 185 S.W.3d at 845.

Generally, one may not bring a claim under the DTPA if it involves death, bodily injury, or mental anguish. TEX. BUS. & COM. CODE ANN. § 17.49(e) (West Supp. 2014). However, section 17.50(h) of the DTPA permits a plaintiff to bring claims that would normally be exempt from the DTPA if a claimant is granted the right to bring a claim under the DTPA by "another law." *Id.* § 17.50(h) (West 2011). These other laws mentioned in section 17.50(h) are generally referred to as "tie in" statutes as they "tie in" to the DTPA such that a violation of the "tie in"

statute is a violation of the DTPA. *Hansberger v. EMC Mortg. Corp.*, No. 04-08-00438-CV, 2009 WL 2264996, at *2 (Tex. App.—San Antonio July 29, 2009, pet. denied) (mem. op.).

The provision Osuna relies upon as a "tie-in" statute is found in Title 25 of the Texas Administrative Code, which relates to "Health Services." *See* 25 TEX. ADMIN. CODE § 137.55(j) (2007) (Tex. Dep't of State Health Servs., Birthing Centers). We begin by noting that provisions in the TAC are *rules* adopted by a state agency, and compiled, indexed, and published by the Texas Secretary of State. *See* TEX. GOV'T CODE ANN. § 2002.051(a) (West 2008). Thus, it could be said that as agency rules — as opposed to statutes, which are passed by the Legislature and signed by the governor — the provisions in the TAC do not rise to the level of a statute that might operate as a tie-in for purposes of an action under the DTPA. However, even if the agency rules set forth in the TAC could be regarded as statutes for purposes of "tying-in" to the DTPA, we hold the provision relied upon by Osuna does not contain "tie-in" language.

Osuna relies upon section 137.55(j), which is in Chapter 137 and governs birthing centers. *See* 25 TEX. ADMIN. CODE § 137.55(j). Section 137.55 contains several provisions requiring birthing centers to ensure compliance with various provisions of state and federal law, e.g., ensure midwives do not violate relevant provisions of the Texas Occupations Code, comply with the Clinical Laboratory Improvements Amendments of 1988 in the Code of Federal Regulations, ensure nurses comply with relevant provisions of the Texas Occupations Code, etc. *Id.* §§ 137.55(a)-(o). Subsection (j) states that birthing centers "shall not commit a false, misleading, or deceptive act or practice as that term is defined in the Deceptive Trade Practices-Consumer Protection Act, Business and Commerce Code, § 17.46." *Id.* § 137.55(j).

When construing a statute, we are to give effect to the Legislature's intent and to do so, we begin with the plain language of the statute. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,

331 S.W.3d 419, 422 (Tex. 2010). We may not judicially amend a statute and add words that are not contained in its language. *See Illiff v. Illiff*, 339 S.W.3d 74, at 80–81 (Tex. 2011). Admittedly, section 137.55(j) precludes birthing centers from committing deceptive acts or practices, "as that term is defined" in the DTPA. 25 TEX. ADMIN. CODE § 137.55(j). However, unlike the true tie-in statutes referenced below, section 137.55(j) does not include any language to suggest a plaintiff may bring a cause of action under the DTPA for violation of the provision. *Id.* Section 137.55(j) does not create a cause of action under the DTPA.

Our position is supported by a survey of statutes that have been held by this court to be "tie-in" statutes with regard to the DTPA. *Hansberger*, 2009 WL 2264996, at *2; *see, e.g.*, TEX. BUS. & COM. CODE ANN. § 20.12 (West 2009) (violation of statute governing "Regulation of Consumer Credit Reporting Agencies" statute); TEX. BUS. & COM. CODE ANN. § 601.204 (West Supp. 2014) (violation of statutes governing "Cancellation of Certain Consumer Transactions"); TEX. PROP. CODE ANN. § 41.006(b) (West 2014) (violation of statutes governing "Certain Sales of Homestead"); TEX. PROP. CODE ANN. § 41.007(b) (West 2014) (violation of statutes governing "Home Improvement Project"); TEX. FIN. CODE ANN. § 392.404(a) (West 2006) (violations of statute governing "Debt Collection"); TEX. FIN. CODE ANN. § 393.504 (West 2006) (violation of statutes governing "Credit Services Organizations")). In each of these statutes, the Legislature specifically stated the conduct in the statute or chapter *is a violation* of the DTPA, *is actionable* under the DTPA, or both. *See id.* For example, section 41.007(b) of the Property Code specifically states that a violation of the statute pertaining to home improvement contracts "is a false, misleading, or deceptive act or practice within the meaning of Section 17.46, Business & Commerce Code, and is actionable in a public or private suit brought under the provisions of the Deceptive Trade Practices-Consumer Protection Act (Subchapter E, Chapter 17, Business & Commerce Code)." TEX. PROP. CODE ANN. § 41.007(b).

Section 137.55(j) of the TAC, however, contains neither language that a violation of the provision is a DTPA claim or is actionable under the DTPA. *See* 25 TEX. ADMIN. CODE § 137.55(j). Rather, it merely states birthing centers are not to engage in deceptive acts or practices and uses the DTPA to define what is meant by deceptive acts or practices. *Id.* Moreover, Osuna has not cited any authority, nor have we found any, that suggests section 137.55(j) or any other provision in the TAC constitutes a "tie-in" statute under the DTPA. Accordingly, we hold section 137.55(j) is not a "tie-in" statute that would permit Osuna to bring an action against Lopez under the DTPA. Moreover, even if the court were to hold it is a "tie-in" provision, there is no authority to support Osuna's contention that this would somehow permit her to plead around the expert reporting requirements of Chapter 74 when her core complaint is, in actuality, a health care liability claim.

### *Res Ipsa Loquitor?*

Lastly, Osuna contends that even if her claims are health care liability claims, she was not required to serve an expert report as mandated by section 74.351(a) of the Civil Practice and Remedies Code. Citing a single case, *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990), Osuna asserts "it is well settled that even in instances where the Court determines that a claim is one classified as a HCLC, an expert is not needed to 'establish a breach of a medical duty where the departure is plainly within the common knowledge of laymen.'"

The case relied upon by Osuna concerns the doctrine of *res ipsa loquitor*. The Texas Medical Liability Act specifically states that the doctrine of *res ipsa loquitor* applies only to health care liability claims in cases to which it was applied by Texas appellate courts as of August 29, 1977. TEX. CIV. PRAC. & REM. CODE ANN. § 74.201 (West 2011). Historically, the doctrine has been restrictively applied in medical malpractice cases, applying in only very, very few instances. *Haddock*, 793 S.W.2d at 951. According to the very case relied upon by Osuna, "Texas courts

have generally recognized that *res ipsa loquitur* is inapplicable in medical malpractice cases." *Id.* In fact, there are only three recognized instances in which the Texas appellate courts have applied the doctrine in medical malpractice cases: (1) negligence in the use of mechanical instruments; (2) operating on the wrong portion of the body; and (3) leaving surgical instruments or sponges in the body. *Losier v. Ravi*, 362 S.W.3d 639 642–43 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Haddock*, 793 S.W.2d at 951; *Scott v. Beechnut Manor*, 171 S.W.3d 338, 343 (Tex. App.— Houston [14th Dist.] 2005, pet. denied)). None of these recognized instances are at issue here, and we have not found a single case applying the doctrine to a midwife at any time, much less before August 29, 1977. Accordingly, we hold the doctrine of *res ipsa loquitor* is inapplicable to this case.

### CONCLUSION

Based on the foregoing, we hold Osuna's claims are health care liability claims and she was required to file an expert report as mandated by section 74.351(a) of the Civil Practice and Remedies Code. Accordingly, we reverse the trial court's order denying Lopez's motion to dismiss and remand the cause to the trial court for rendition of judgment dismissing Osuna's claims with prejudice and awarding Lopez reasonable attorney's fees and costs of court.

Marialyn Barnard, Justice