

# NUMBER 13-22-00508-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANNABELLE LOPEZ,                                                      Appellant,

v.

NAYELY HERRERA,                                                      Appellee.

## ON APPEAL FROM THE 206TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Annabelle Lopez appeals the trial court's denial of her motion to dismiss appellee Nayely Herrera's suit pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.552. In two issues,

which we construe as one, Lopez argues the trial court erred in denying her motion to dismiss because Herrera's suit is a health care liability claim and she failed to timely serve an expert report. We affirm.

## I.    BACKGROUND

On April 16, 2020, Herrera signed a Cosmetic Surgery Financial Agreement to schedule a liposuction surgery with Nobu Medical Spa L.L.C. (Nobu) after consulting with Lopez, a licensed physician. Pursuant to the agreement, Herrera made a $4,000 deposit with the balance of the surgery fee to be paid at least three weeks before the surgery. The agreement further provided that $1,000 of the deposit would be forfeited if Herrera did not show up for surgery or canceled within thirty days of the surgery. Lopez instructed Herrera that she would need to submit bloodwork to obtain clearance for the procedure, which Herrera completed. Within the next couple of weeks, a Nobu representative notified Herrera that Nobu now required patients to present a negative COVID-19 test prior to surgery upon direction from the Center for Disease Control. Herrera was unable to secure the required testing, and she later cancelled her surgery and requested a refund. On May 8, 2020, an attorney retained by Herrera presented a written demand to Lopez for a full refund of $4,000 plus an additional $800 in attorney's fees. On May 13, 2020, Lopez issued Herrera a refund of $4,000.

On May 18, 2020, Herrera sued Lopez for violations of the Deceptive Trade Practices Act (DTPA).[1] *See* TEX. BUS. & COM. CODE ANN. §§ 17.001–.955. Herrera alleged Lopez breached her express warranty that she would schedule a liposuction surgery upon

---

[1] Herrera's live pleading is her third amended petition. Herrera abandoned causes of actions for fraud and breach of contract.

the payment of $4,000 and the submitting of a blood sample. Herrera sought compensatory damages, statutory penalties, court costs, and attorney's fees.

Lopez filed an answer, a counterclaim for breach of contract, and later a motion to dismiss pursuant to § 74.351 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. In her motion, Lopez argued that the "gravamen" of Herrera's complaint is a health care liability claim and that Herrera failed to file an expert report as required by § 74.351. *See id.* In response, Herrera generally argued that her claim did not qualify as a health care liability claim as defined by § 74.001(a)(13), thus she was not required to file an expert report. *See id.* § 74.001(a)(13). The evidence before the trial court included affidavit testimony from both parties, the parties' agreement, correspondence concerning the refund, and written discovery responses. Following a hearing, the trial court denied Lopez's motion to dismiss. This interlocutory appeal followed. *See id.* § 51.014(a)(9).

## II.   DISCUSSION

### A.   Standard of Review & Applicable Law

The Texas Medical Liability Act (TMLA) requires a claimant who asserts a "health care liability claim" against a "physician or health care provider" to serve on each defendant one or more expert reports describing the expert's opinions addressing the applicable standards of care, how the defendant's conduct failed to meet those standards, and how those failures caused the claimant's injury, harm, or damages. *Id.* § 74.351(a), (r)(6). If a claimant fails to serve the report within 120 days after the defendant files an original answer, the trial court must dismiss the claim with prejudice and award the defendant attorney's fees and costs. *Id.* § 74.351(b).

3

A "health care liability claim" is defined as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). This definition has been construed to include three elements: (1) the defendant is a physician or health care provider; (2) the claim concerns treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's conduct is the proximate cause of the plaintiff's injury. *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 840 (Tex. 2022) (citing *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012)). "[C]laims alleging the negligent provision of health care fall within the [TMLA] when the alleged damages stem from health-care-related claims, regardless of the type of injury alleged." *Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 666 (Tex. 2020).

We review de novo the legal question of whether a plaintiff has pleaded a health care liability claim. *Gaytan*, 640 S.W.3d at 836 (citing *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019)). In making our determination, "we must consider the 'entire court record,' including 'the pleadings, motions and responses, and relevant evidence properly admitted.'" *Id.* (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012)). We are not bound by how the plaintiff characterizes a claim in her pleadings if they do not accurately reflect the claim's underlying nature. *See Loaisiga*, 379 S.W.3d at 255. Instead, we consider the operative facts underlying the plaintiff's claim that are relevant to her alleged injury, rather than how she describes the facts or legal

4

theories in her pleadings. *Collin Creek Assisted Living Ctr. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023). If the operative facts could support a "health care liability claim," then the TMLA applies, and an expert report is required. *See id.* The TMLA creates a rebuttable presumption that a plaintiff's claim is a health care liability claim if it is brought against a physician or health care provider and is based on facts "implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga*, 379 S.W.3d at 258.

## B.    Analysis

The parties do not dispute that Herrera's claim satisfies the first and third elements of a health care liability claim—that Lopez is a physician and her conduct is the proximate cause of Herrera's injury. In reviewing the entire record, we agree that those elements have been satisfied. As to the second element, Lopez argues that the true nature of Herrera's complaint is a claim for lack of treatment or a deviation from accepted safety standards. Herrera responds that her claim concerns only "how much refund is due to Herrera".[2]

We disagree that Herrera is complaining of a lack of treatment. The operative facts underlying Herrera's claim are whether Herrera's own cancellation of a procedure because she could not procure a negative COVID-19 test entitles her to a refund of her

---

[2] Herrera further contends that Lopez did not raise in the trial court with sufficient specificity how Herrera's claim is a health care liability claim; therefore, Lopez did not preserve her appellate arguments. We disagree. Lopez's motion to dismiss argues that the gravamen of Herrera's claim is a health care liability claim. The motion identifies the governing statutory authority. At the hearing on the motion, Lopez elaborated that the claim is centered on the COVID-19 testing requirement which "clearly involves health care." We conclude Lopez stated the grounds for dismissal with sufficient specificity "to make the trial court aware of the complaint[.]" TEX. R. APP. P. 33.1(a)(1)(A).

deposit.[3] It was Herrera's decision to forgo the surgery. *Cf. Lopez v. Osuna*, 453 S.W.3d 60, 66–67 (Tex. App.—San Antonio 2014, no pet.) (holding that DTPA claims based on health care provider's refusal to provide promised labor and delivery services were health care liability claims). Although Herrera's pleading complains that Lopez breached her warranty to provide liposuction surgery,[4] the record is clear that Herrera did not want to pursue the surgery and is complaining of Lopez's actions in the handling of her refund request. In other words, Herrera does not seek recovery for injuries resulting from Lopez's failure to perform the procedure.

> Just as a claimant cannot avoid the [TMLA]'s application by artfully pleading claims for ordinary negligence or premises liability, she cannot activate the [TMLA]'s application by inartfully pleading claims for "medical negligence." In both circumstances, the [TMLA]'s application depends not on the labels contained within the pleading but on the facts revealing the claim's underlying nature, as found within the entire record.

*Gaytan*, 640 S.W.3d at 838.

Next, Lopez contends that Herrera alleges a safety-standards claim. Herrera's claim is at least tangentially related to safety, but her complaint, as it concerns her entitlement to a refund, is regarding Lopez's adherence to, rather than deviation from, a safety standard. *See Coming Attractions*, 595 S.W.3d at 664 (noting that a hospital's efforts in "controlling the spread of a virus to its nursing staff and the public . . . implicates safety standards directly related to health care"). A safety-standards claim against a physician or health care provider is a health care liability claim only if a "substantive nexus" exists between the "safety standards allegedly violated and the provision of health

---

[3] It appears from the record that Herrera contends that she is entitled to more than the $4,000 returned to her. Although Lopez refunded this sum, Lopez claims Herrera is not entitled to any refund.

[4] For purposes of this opinion, we need not decide whether such a warranty exists or is actionable.

6

care." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). Resolving Herrera's claim does not require an examination of whether Lopez violated a safety standard. There is no dispute that she did not. *Cf. Coming Attractions*, 595 S.W.3d at 667 (holding that a claim alleging that a hospital's departure from safety standards related to caring for and treating a patient with the Ebola virus was a health care liability claim where the claimant alleged that it had to close its store because a hospital failed to prevent the spread of the virus). Because Herrera does not allege a deviation from, or violation of, a safety standard, her claim is not a safety-standards claim.[5] *See Ross*, 462 S.W.3d at 504.

Having rejected each of Lopez's arguments, we conclude that Herrera's claim does not concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care. *See Gaytan*, 640 S.W.3d at 840. Therefore, Herrera's claim does not constitute a health care liability claim, and the trial court did not err in denying Lopez's motion to dismiss. We overrule Lopez's sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
9th day of May, 2024.

---

[5] If Herrera's claim did allege a deviation or violation of a safety standard, we would analyze whether there is a substantive nexus between the safety standards violated and the provision of health care, using the seven-factor test announced in *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). *See Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 888 (Tex. 2023).