

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-24-00785-CV

**THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO**,
Appellant

v.

Ray **MAGDALENO**, Individually and Next Friend of M.M, a Minor,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2024CI06880
Honorable Norma Gonzales, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:     Rebeca C. Martinez, Chief Justice
    Adrian A. Spears II, Justice
    H. Todd McCray, Justice

Delivered and Filed: June 4, 2025

REVERSED AND REMANDED

The University of Texas Health Science Center at San Antonio ("UTHSCSA") brings this interlocutory appeal from the trial court's order denying its Chapter 74 motion to dismiss a healthcare liability claim brought by Ray Magdaleno, individually and as next friend of M.M.,[1] a child, (hereinafter "Father") for healthcare rendered by Mark Miller, M.D., D.M.D., a UTHSCA employee. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) ("A person may appeal from an interlocutory order of a district court . . . that denies all or part of the relief sought by a motion

---

[1] To protect the identity of the minor, we refer to M.M. by his initials.

under Section 74.351(b) . . . .").  In three issues, UTHSCSA argues that the trial court abused its discretion in overruling its objection to an expert reported signed by Steven C. Maller, D.D.S., because Dr. Maller: (1) is unqualified to opine on Dr. Miller's alleged departure from the standard of care; (2) is unqualified to opine on the causal relationship between Dr. Miller's alleged departure from accepted standards of care and M.M.'s alleged injuries; and (3) failed to demonstrate that he has training or experience in performing the procedure at issue.  In UTHSCSA's fourth issue, it argues that Dr. Maller's report does not constitute a "good faith effort" to comply with the expert report requirement in the Texas Medical Liability Act (the "Act"), and therefore, the trial court abused its discretion in denying its motion to dismiss.  We reverse and remand.

## I. BACKGROUND

In July 2022, Priscilla Chang, a dentist, notified M.M.'s parents that M.M., who was seven-years old at the time, had two "extra teeth" in the front of his mouth that needed to be extracted.  In August 2022, M.M. was evaluated at Sonterra Oral & Maxillofacial Surgery.  A "3D scan" confirmed that M.M. needed a surgical procedure, and it was to be scheduled upon insurance confirmation.

On October 12, 2022, M.M.'s parents sought a second opinion from Dr. Miller, who also recommended a surgical procedure.  M.M.'s parents decided to proceed with Dr. Miller.  According to Father's petition, "Dr. Miller recommended that the surgery be done in a hospital setting because [M.M.] would have to be intubated for the procedure" due to its "invasive nature."  The surgery had originally been scheduled for December 13, 2022, but it did not occur until February 21, 2023.  No further imaging studies were ordered before the surgery.  Father's petition alleges that:

> On February 21, 2023 . . . [t]he hospital staff explained the surgery, removal of a root tip and two extra teeth.  An hour into the surgery[,] Dr Miller came out to confirm if we were removing two extra teeth and if the root tip was one of the extra

teeth. [M.M.'s] mother informed Dr. Miller that there was one root tip and two extra teeth to be removed. Dr. Miller went back to the Operating Room and came back fifteen minutes later to let [M.M.'s parents] know that everything was done and [M.M.] did great.

On February 27, 2023, at the post operation appointment[,] Dr. Miller said that everything looked good and that [M.M.] might need a ["]ball and chain["] if the tooth did not come out on its own. The [parents] left the appointment thinking everything was fine. Dr. Miller set another appointment for August of 2023 to take x-rays to determine if the permanent tooth had shifted down or if Michael would have to have a "ball and chain". [Mother], sensing something was not right, scheduled another appointment with another dentist (Dr. Chang).

On July 6, 2023, Dr. Chang took an x-ray and noted the incorrect tooth had been removed. Dr. Miller had removed a permanent tooth and one extra tooth was still in place. [Mother] called Defendant the next day and was told th[at] Dr. Miller had moved to another state.

On July 18, 2023[,] [M.M.] met with Dr. Amarista for a reevaluation. [M.M.'s parents] were told by Dr. Amarista that "the incident was an honest mistake" because the crowns of the teeth looked similar.

Father provided timely pre-suit notice, and he timely filed a healthcare liability claim.

In an attempt to comply with section 74.351 of the Texas Civil Practice and Remedies Code, Father served an expert report signed by Steven C. Maller, D.D.S. Dr. Maller opined that Dr. Miller breached the standard of care by: (1) failing to adequately inform M.M.'s parents of the risk of excising the wrong tooth; (2) not obtaining updated imaging studies on a young and growing patient and, at the very least, not obtaining intraoperative imaging, during the surgery, because it was difficult to discern which tooth needed to be extracted; (3) removing the wrong tooth; and (4) failing to accurately report the results of post-operative imaging that revealed the wrong tooth had been extracted.

UTHSCSA objected to Dr. Maller's report, and it moved to dismiss Father's healthcare liability claim. UTHSCSA argued that Dr. Maller was a doctor of dental surgery (D.D.S.) whereas Dr. Miller was both a medical doctor (M.D.) and doctor of dental medicine (D.M.D.). This variance, according to UTHSCSA, rendered Dr. Maller unqualified to opine on alleged breaches

of the applicable standard of care and causation. Father responded by arguing that "[b]ecause Dr. Miller was acting in his capacity as a dental professional when he pulled [M.M.'s] wrong tooth[,] Defendant's claim that Dr. Maller is not qualified because he is not an MD is mute and void."

The trial court signed an "Order Overruling Defendant's Objections to Plaintiff's Chapter 74 Expert Report and Denying Motion to Dismiss." UTHSCSA timely filed a notice of interlocutory appeal.

## II. DISCUSSION

### A. Standard of Review

We generally review a trial court's order on a motion to dismiss a health care liability claim under an abuse-of-discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). However, when our review turns on a question of law, we must apply a de novo standard of review. *Lopez v. Osuna*, 453 S.W.3d 60, 64 (Tex. App.—San Antonio 2014, no pet.).

### B. Applicable Law

UTHSCSA's issues implicate three of the Act's provisions. First, section 74.351(r)(5) defines an "expert" to mean:

(A) with respect to a person giving opinion testimony regarding whether a *physician* departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

. . .

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a *physician* who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D)     with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a *dentist*, a *dentist* or *physician* who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(A), (C), (D) (emphasis added).

Second, section 74.401(a) provides:

(a)     In a suit involving a health care liability claim against a *physician* for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician *departed from accepted standards* of medical care only if the person is a *physician* who:

(1)     is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2)     has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3)     is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id*. § 74.401(a) (emphasis added).

Third, section 74.403 provides in relevant part:

(a)     Except as provided by Subsections (b), (c), and (c-1), in a suit involving a health care liability claim against a *physician* or *health care provider*, a person may qualify as an expert witness on the issue of the *causal relationship* between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a *physician* and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

(b)     In a suit involving a health care liability claim against a *dentist*, a person may qualify as an expert witness on the issue of the *causal relationship* between the alleged departure from accepted standards of care and the injury, harm, or damages claimed if the person is a *dentist* or *physician* and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

*Id*. § 74.403(a), (b) (emphasis added).

## C.     Dentist or Physician

In UTHSCSA's first issue, it argues that the trial court abused its discretion in overruling its objections to Dr. Maller's qualifications because Dr. Maller, as a dentist, is unqualified under section 74.401(a) to render an opinion that Dr. Miller, who is both a medical doctor and a doctor of dental medicine, breached the standard of care. UTHSCSA emphasizes that the more specific provision relating to a physician housed in section 74.401(a) governs over the general provision relating to a health care provider housed in section 74.402(b). Relatedly, in UTHSCSA's second issue, it argues that the trial court abused its discretion in overruling its objection to Dr. Maller's qualifications because Dr. Maller is unqualified under section 74.403(a) to render an opinion that Dr. Miller caused the injury, harm, or damages claimed by Father. UTHSCSA references *Davis v. Webb*, 246 S.W.3d 768, 774 (Tex. App.—Houston [14th Dist.] 2008, no pet.), wherein our sister court held that an optometrist was not statutorily qualified to render opinions regarding post-operative care by a physician, specifically an ophthalmologist.

Father responds by arguing that UTHSCSA's fixation on the statutory provisions relating to claims against physicians is misplaced because Dr. Miller was acting as a dentist — rather than a physician — when he performed the surgical procedure, making sections 74.351(r)(5)(D), 74.402(b), and 74.403(b) more apt. Father emphasizes that he is not complaining about the administration of anesthesia, but that the applicable standard of care is a "wrong site tooth extraction," and "the standard of care for giving anesthesia in a hospital setting is in no way relevant to this case."

Assuming without deciding that Father's "acting as" contention is the standard for determining which statutory provision governs, Dr. Maller's report indicates that the physician provisions control because Dr. Miller, as a medical doctor and a doctor of dental medicine, was acting as a physician to M.M. and not a dentist. *See Harrington v. Schroeder*, No. 04-15-00136-

CV, 2015 WL 9001573, at *3 (Tex. App.—San Antonio Dec. 16, 2015, pet. denied) (mem. op.) ("Analysis of the expert's qualifications under section 74.351 is limited to the four corners of the expert report and the expert's curriculum vitae.").

First, Dr. Maller's report notes that Dr. Chan, a dentist, referred M.M. to an oral and maxillofacial surgeon, such as Dr. Miller, for evaluation. UTHSCSA makes much of this referral, arguing that "[t]here is a reason why M.M.'s dentist referred him to an oral and maxillofacial surgeon to undergo the procedure at issue." The referral alone is not as determinative as UTHSCSA suggest. A qualified healthcare provider may, for any number or reasons, feel more comfortable referring a patient to another provider for a procedure. However, Dr. Maller's failure to explain his "training or experience" with any aspect of the procedure at issue weighs against Father's contention that Dr. Miller was "acting as" a dentist.[2]

Second, Dr. Maller's report details that the surgical procedure Dr. Miller performed took place "in the OR [operating room] under general anesthesia." While Father disclaims any complaint regarding "the standard of care for giving anesthesia in a hospital setting," Dr. Maller's report opines:

> Although no current images were available, they certainly could have been taken when there was confusion. The UTHSCSA records indicate that during the surgery it was "difficult to discern whether odontoma vs unerupted #9. Staff spoke with mom and discussed the possibility of obtaining intraop imaging but mother stated that it was okay to proceed . . . discussed the possibility that the teeth had shifted since CT scan and could not r/o this was the permanent tooth. Mom wished to proceed". The mother disputes this interaction in her letter. *However, this is a professional decision.* If there was ANY uncertainty, then intraoperative imaging was absolutely indicated! It would likely have prevented the "wrong tooth" removal of tooth #9.

---

[2] While an expert's qualification "on the basis of training or experience," *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(a)(3), is a distinct inquiry regarding how one qualifies to opine on the standard of care element, it is helpful in analyzing UTHSCSA's first and second issues — and by extension Father's "acting as" contention — because it dovetails with the standard of care should the case proceed to trial. *See Jackson v. Axelrad*, 221 S.W.3d 650, 655 (Tex. 2007) ("The burden of proof is on the patient-plaintiff to establish that the physician-defendant has undertaken a mode or form of treatment which a reasonable and prudent member of the medical profession would not have undertaken under the *same or similar circumstances*.") (quoting *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex. 1977)) (emphasis added).

(ellipses in original; emphasis added). Thus, Dr. Maller takes issue with Dr. Miller's "professional decision" to forgo intraoperative imaging. Again, Dr. Maller fails to explain whether he, as a dentist, has any "training or experience" with the "professional decision" of ordering intraoperative imaging on a patient — of any age — under general anesthesia.

That M.M. was referred from a dentist to an oral and maxillofacial surgeon, that Dr. Maller, as a dentist, fails to detail any "training or experience" with the surgery at issue that was performed by an oral and maxillofacial surgeon, and that an alleged breach of the standard of care relates to a "professional decision" regarding intraoperative imaging of a patient under general anesthesia establish that Father's complaint is directed at a physician who allegedly departed from accepted standards of medical care and that sections 74.401(a) and 74.403(a), which relate to healthcare liability claims against a physician, apply. We sustain UTHSCSA's first and second issues.[3]

## D.    Remand or Render

In UTHSCSA's fourth issue, it argues that the trial court abused its discretion in denying its motion to dismiss. UTHSCSA references *Scoresby v. Santillan*, 346 S.W.3d 546, 557 (Tex. 2011), for the proposition that "[i]n the absence of 'the opinion of an individual with expertise' that the claim has merit, no good faith effort is made." The full passage from *Scoresby* provides:

> We conclude that a thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains *the opinion of an individual with expertise* that the claim has merit, and if the defendant's conduct is implicated. We recognize that this is a minimal standard, but we think it is necessary if multiple interlocutory appeals are to be avoided, and appropriate to give a claimant the opportunity provided by the Act's thirty-day extension to show that a claim has merit. *All deficiencies*, whether in the expert's opinions or *qualifications*, are subject to being cured before an appeal may be taken from the trial court's refusal to dismiss the case.

---

[3] Because of our disposition of UTHSCSA's first and second issues, we need not decide UTHSCSA's third issue regarding Dr. Maller's training or experience to opine. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a)(3); Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

*Id.* (emphasis added).  Properly framed, UTHSCSA confuses "an individual with expertise" with one who meets the statutory qualifications to sign an expert report under the Act.

UTHSCSA also references our memorandum opinion in *Cuellar v. Warm Springs Rehabilitation Foundation*, No. 04-06-00698-CV, 2007 WL 3355611, at *4 (Tex. App.—San Antonio Nov. 14, 2007, no pet.) (mem. op.), and our sister court's opinion in *Davis*, 246 at 774, for their holdings that a report authored by an individual who is not statutorily qualified to offer an expert opinion is considered "no report" and therefore does not entitle the claimant to a thirty-day extension.  "However, these cases were decided before *Scoresby*, which imposed a new, more 'lenient' standard for the section 74.351(c) extension, and which explicitly stated that '[a]n individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so.'" *Matagorda Nursing & Rehab. Ctr., L.L.C. v. Brooks*, No. 13-16-00266-CV, 2017 WL 127867, at *6 (Tex. App.—Corpus Christi-Edinburg Jan. 12, 2017, no pet.) (mem. op.) (quoting *Scoresby*, 346 S.W.3d at 555). Indeed, *Scoresby* holds that "[t]he trial court should err on the side of granting the additional time and must grant it if the deficiencies are curable." *Scoresby*, 346 S.W.3d at 549.  For clarification, we expressly recognize that our holding in *Cuellar*, 2007 WL 3355611, at *4, was abrogated by *Scoresby*, 346 S.W.3d at 555.  We overrule UTHSCSA's fourth issue.

### III. CONCLUSION

We reverse the trial court's "Order Overruling Defendant's Objections to Plaintiff's Chapter 74 Expert Report and Denying Motion to Dismiss" and remand for the trial court to determine whether to grant Father a thirty-day extension to file a report or reports that are compliant with the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

Rebeca C. Martinez, Chief Justice